1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,              No.  2:07-cr-0139 WBS AC P

12               Plaintiff/Respondent,

13        v.                                FINDINGS AND RECOMMENDATIONS

14   RICHARD NUWINTORE,

15               Defendant/Petitioner.

16

17        Petitioner Richard Nuwintore seeks coram nobis relief from his 2011 conviction for credit

18   card fraud.  ECF No. 140 (Amended Petition for Writ of Coram Nobis).  Petitioner attacks his

19   guilty plea on grounds it was induced by the ineffective assistance of trial counsel, who failed to

20   competently advise petitioner regarding the immigration consequences of his plea.  Id.  The

21   government has moved to dismiss the petition as barred by the plea agreement's waiver of

22   collateral attack.  ECF No. 143.  Both matters came on for hearing on March 4, 2015.  Brian A.

23   Fogerty appeared on behalf of the United States, and Charles M. Bonneau, Jr., appeared on behalf

24   of petitioner.  For the reasons set forth below, the undersigned recommends that the motion to

25   dismiss be granted.

26   ////

27   ////

28   ////

                                        1

1          I.       FACTUAL AND PROCEDURAL BACKGROUND

2      A.  Immigration Proceedings Prior To Petitioner's Prosecution[1]

3          Petitioner is a native and citizen of Burundi.  His father, a former Burundian government

4  official, became an outspoken critic of the government.  Petitioner joined the youth faction of the

5  opposition organization with which his father was affiliated, and became a high-ranking member.

6  In 1991, petitioner's father was arrested by Burundian military personnel.  He died in government

7  custody.  Although the family was told that he had died of natural causes, petitioner later learned

8  that his father had been killed because he spoke out against government corruption.

9          Petitioner first came to the United States on a student visa in 1992.  When he returned to

10  Burundi in 1995, he was apprehended at the airport upon arrival, interrogated and beaten, and

11  detained for twenty-seven days.  The abuse continued throughout petitioner's detention.

12          On August 6, 1996, petitioner was granted asylum status in the United States.  The

13  immigration court found that petitioner had been politically persecuted and faced further

14  persecution if he returned to Burundi.  Petitioner became a lawful permanent resident ("LPR") in

15  September 2000.

16      B.  The Offense

17          On March 21, 2007, petitioner was charged in a criminal complaint with access device

18  fraud.  ECF No. 1.  A two-count indictment was returned on April 5, 2007.  ECF No. 9.  The

19  indictment alleged as follows:

20          COUNT ONE:  [18 U.S.C. § 1029(a)(2) – Access Device Fraud]

21          The Grand Jury charges: THAT

22          RICHARD NUWINTORE, defendant herein, from approximately
           February, 2003, through approximately February, 2005, in the
23          County of Sacramento, State and Eastern District of California, and
           elsewhere, knowingly and with the intent to defraud, did use one or
24          more unauthorized access devises during a one-year period, and by
           such conduct obtained things of value aggregating $1,000 or more
25          during that period, such conduct having an effect on interstate
           commerce, all in violation of Title 18, United States Code, Section
26          1029(a)(2).

27  ───────────────────────

[1]  See ECF No. 140-4 (Decision and Order of the Immigration Court dated May 22, 2012).

28

2

<div style="margin-left: 2em;">

COUNT TWO:  [18 U.S.C. § 1029(a)(2) – Access Device Fraud]

The Grand Jury charges: THAT

RICHARD NUWINTORE, defendant herein, from approximately April, 2004, through approximately January, 2006, in the County of Sacramento, State and Eastern District of California, and elsewhere, knowingly and with the intent to defraud, did use one or more unauthorized access devises during a one-year period, and by such conduct obtained things of value aggregating $1,000 or more during that period, such conduct having an effect on interstate commerce, all in violation of Title 18, United States Code, Section 1029(a)(2).

</div>

On December 9, 2010, five days before trial was set to begin, defendant changed his plea pursuant to a plea bargain.  ECF No. 113.

C.  The Change of Plea

   1.  The Plea Agreement

The written plea agreement specified that petitioner would plead guilty to Count One of the indictment, and the government would move to dismiss Count Two.  The government agreed to recommend that petitioner be sentenced within the applicable guideline range for his offense as determined by the Probation Office.  ECF No. 115 at 2-4.

      a.  Stipulated Factual Basis

The stipulated factual basis attached to the plea agreement reads in its entirety as follows:

<div style="margin-left: 2em;">

From 2003 through 2007 the defendant used other people's credit cards without their authorization to purchase airline tickets for himself and others.  The parties agree that the provable loss personally attributable to the defendant is $13,301.11.

Documents from Southwest Airlines show $2,386.00 in fraudulent credit card transactions linked to the defendant either because he was the passenger, the e-ticket for someone else was emailed to the defendant, or the e-ticket was for a person who had used Western Union to send money to the defendant. When the reservations were made, the defendant entered credit card billing addresses other than his own.

Documents from United Airlines show $10,915.11 in fraudulent credit card transactions linked to the defendant either because he was the passenger, an e-ticket for someone else was emailed to the defendant, or the e-ticket was for a per-son who had used Western Union to send money to the defendant.

One ticket that the defendant purchased without authorization on someone else's credit card was the one that he used to fly on United

</div>

Airlines from Sacramento, California to Reagan National Airport in Virginia. The flight was on February 18, 2005 and the ticket cost approximately $1,029.80. The credit card used to purchase this ticket belonged to Sharon B. In purchasing the ticket, Nuwintore entered his own name as the passenger name, but the credit card and credit card billing address of Sharon B. The e-ticket was emailed to a Yahoo email account controlled by Nuwintore and opened in the Sacramento area within a week of the ticket purchase.

The conduct affected interstate commerce as some or all of these flights were interstate flights.

ECF No. 115 at 11.

b.  Immigration Consequences

The plea agreement provided in relevant part as follows:

**Impact of Plea on Defendant's Immigration Status:**  Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which the defendant is pleading guilty. Indeed, because defendant is pleading guilty to access device fraud with a loss over $10,000, removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

ECF No. 115 at 9.

c.  Waiver of Post-Conviction Review

The plea agreement provided in relevant part as follows:

**Waiver of Appeal and Collateral Attack:**  The defendant understands that the law gives him a right to appeal his conviction and sentence.  He agrees as part of his plea, however, to give up the right to appeal the conviction and the right to appeal any aspect of the sentence imposed in this case so long as his sentence is no longer than the statutory maximum for the offense to which he is pleading guilty.  He specifically gives up his right to appeal any order of restitution the Court may impose.

Regardless of the sentence he receives, the defendant also gives up any right he may have to bring a post-appeal attack on his conviction or his sentence.  He specifically agrees not to file a motion under 28 U.S.C. § 2255 or § 2241 attacking his conviction or sentence. . . .

4

ECF No. 115 at 7-8.

> 2.  <u>The Rule 11 Colloquy</u>

At the change of plea hearing, the following exchange took place:

> THE COURT: Are you a citizen of the United States?
>
> THE DEFENDANT: No, I'm not.
>
> …
>
> THE COURT: Do you understand that your plea of guilty could result in your being deported from the United States?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Mr. Haydn-Myer, you had made some reference to that in one of your pleadings to the Court. Have you had an opportunity to consult with outside immigration counsel on this matter?
>
> MR. HAYDN-MYER: Your Honor, I didn't -- I did receive an e-mail back from the organization, Mr. Smith, as the Court correctly discussed. I believe that Mr. Nuwintore would be facing deportation charges based on this. It's actually written into the plea agreement. He's been advised of his rights that, based on this plea, it is our belief that he will mandatorily be -- his citizenship or any attempt for his citizenship would be revoked, and he would be deported.
>
> THE COURT: And have you had a full opportunity to explore that with outside counsel?
>
> MR. HAYDN-MYER: Not a full opportunity, but I did have time to research it.
>
> THE COURT: And you're satisfied that the advice that you're giving to Mr. Nuwintore is correct?
>
> MR. HAYDN-MYER: Yes, Your Honor.
>
> THE COURT: All right. So, Mr. Nuwintore, do you understand that your plea of guilty will probably result in your being deported from the United States?
>
> THE DEFENDANT: Yes, Your Honor.

ECF No. 129 (Transcript of Proceedings, December 9, 2010) at 6-8.

Petitioner orally waived his trial rights and his right to appeal or collaterally attack his conviction. <u>Id.</u> at 10. He confirmed the accuracy of the facts set forth in the stipulated factual basis. <u>Id.</u> at 13-14. The court accepted petitioner's plea, finding it freely and voluntarily made.

5

1   Id. at 15.

2       D.   Proceedings Related To Sentencing

3       The initial Presentence Report ("PSR") found that petitioner was responsible for a total

4   loss amount of $263,497.41.  A revised PSR was submitted on May 3, 2011, amending the loss

5   amount to the $13,301.11 figure stated in the factual basis to the plea agreement.

6       On June 6, 2011, petitioner filed Amended Formal Objections to the May 3, 2011, PSR.

7   Petitioner disputed for purposes of restitution the $10,915.11 loss amount specified for United

8   Airlines.  ECF No. 120 (Amended Formal Objections).  Petitioner first contested the accuracy of

9   an allegation that he had personally used a particular airline ticket, id., and then challenged more

10  broadly the evidence on which the government relied for its loss amount calculations, ECF No.

11  122 (Reply To Excel Spreadsheet Provided By The Government).  An evidentiary hearing was

12  held on July 5, 2011.  ECF No. 125 (Minute Order).  Following the presentation of evidence and

13  the arguments of counsel, the Hon. William B. Shubb imposed sentence including restitution in

14  the total amount of $13,301.11.  Id.; ECF No. 126 (Judgment and Commitment).  Petitioner was

15  sentenced to 14 months imprisonment and 36 months supervised release.  Id.

16      E.   Post-Conviction Immigration Developments[2]

17      On October 5, 2011, the Department of Homeland Security ("DHS") charged petitioner as

18  removable from the United States under the Immigration and Nationality Act ("the Act"), section

19  237 (a)(2)(A)(iii), by reason of his conviction of an aggravated felony.  Petitioner denied the

20  charge of removability, and also applied for relief from removal in the form of (1) withholding of

21  removal under section 241(b)(3) of the Act, and (2) withholding of removal under Article III of

22  the Convention Against Torture.  On April 25, 2012, the Immigration Court held a merits hearing

23  on petitioner's application.  The court's decision was filed on May 22, 2012.  ECF No. 140-4.

24      The Immigration Court found that petitioner's conviction for credit card fraud constituted

25  an aggravated felony within the meaning of the Act, because (1) it involved fraud or deceit, and

26  (2) the loss to the victims exceeded $10,000.  ECF No. 140-4 at 13.  Accordingly, the court

27  ───────────────

[2]   See ECF No. 140-4 (Decision and Order of the Immigration Court dated May 22, 2012).

28

6

1  sustained the charge of removability.  Id.

2         An aggravated felony conviction renders a removable non-citizen ineligible for asylum,

3  cancellation of removal, voluntary departure and re-adjustment of status.  Id. at 13.  However,

4  withholding of removal remains available unless the conviction is for a "particularly serious

5  crime."  Id. at 15.  The court found that petitioner's offense was not "particularly serious" within

6  the meaning of the Act.  Id. at 15-18.  The court then proceeded to find that petitioner had

7  established past persecution on the basis of his political opinion, id. at 18-19, and a clear

8  probability of persecution if returned to Burundi, id. at 21-22.  The court found that petitioner

9  would be unable to safely relocate in the country of removal.  Id. at 22.  Accordingly, petitioner

10  was granted withholding of removal pursuant to section 241(b)(3) of the Act.  Id.  The court held

11  that his application for withholding of removal under the Convention Against Torture was moot,

12  but noted that it otherwise would have been granted because petitioner established a likelihood

13  that he would be tortured if returned to Burundi.  Id. at 25.

14         Petitioner remains in withholding of removal status at present, which means that he

15  remains out of custody and eligible for a work permit.  Petitioner cannot, however, regain his

16  permanent resident status or seek citizenship.  If petitioner were to leave the country to visit

17  relatives abroad, he could be barred from reentry.  See ECF No. 140 at 7.  Withholding of

18  removability is subject to cancellation at any time.  Id. at 12 n.3 (citing Singh v. Holder, 753 F.3d

19  826, 834 (9th Cir. 2014)).

20                II.      THE ALLEGATIONS OF THE PETITION

21         Petitioner states a single ground for relief: that trial counsel Christopher Hayden-Meyer

22  rendered ineffective assistance of counsel, in violation of the Sixth Amendment, in relation to

23  petitioner's guilty plea.  Specifically, petitioner alleges that counsel failed to advise him that he

24  faced the predicament in which he now finds himself: adjudicated removable as the result of his

25  plea.  In the first of two declarations attached to the Amended Petition to Vacate Judgment,

26  petitioner states as follows:

27         I was represented by attorney Christopher Haydn-Meyer of
           Roseville.  I entered a negotiated guilty plea on December 9, 2010.
28         During the guilty plea, Mr. Haydn-Meyer stated in open court that

any attempt for citizenship would be denied, and that I would be deported.  It was stipulated during the guilty plea that the loss amount was over $13,000.  I knew that this number was not correct, however, I had no reason to argue about it because I did not know that the loss amount made any difference in the immigration consequences.

Based on prior discussions with Mr. Haydn-Meyer, I did not expect to be deported despite what was said in open court.  I believed that my political asylum status would prevent deportation or removal.  I did not expect to be deported.  Since my father was killed for political reasons in Burundi, and I was almost killed there in 1995, I did not believe that the United States government would return me to Burundi.  Deportation would mean a death sentence for me.  I would not have pled guilty if I thought that there was any chance of deportation.

. . .

At the time of the guilty plea it was not explained to me that the consequences of conviction would be much less if the loss amount were stipulated at less than $10,000.  Had I insisted on going to trial, I am confident that the loss amount would have been less than $10,000, and probably less than $2,000, because of my lack of knowledge and intent and lack of involvement in the United Airlines transactions.

ECF No. 140-1 at 1, 2.

In his supplemental declaration, petitioner provides additional facts:

I was transported in custody for an appearance before Judge Shubb on December 9, 2010.  As I was waiting in the holding cell, Mr. Haydn-Meyer came to visit me.  He advised me of the plea offer of guilty to count one, with count two dismissed.

The case was called at 11:00 a.m.  The attorneys said that there was a plea agreement.  The judge instructed them to prepare the agreement in writing, and return at 2:00 p.m.

Mr. Haydn-Meyer spoke to me again at about 1:40 p.m.  At that time we discussed the immigration consequences.  I stated that I could not face deportation to Burundi because it would be a death sentence.  He assured me that defendants with political asylum status would never be deported.  He showed me the portion of the written plea agreement that indicated that there could be immigration consequences, but he said I was protected by my political asylum status.

The written plea agreement contains a clause which states, "because defendant is pleading guilty to access device fraud with a loss amount over $10,000, removal is presumptively mandatory."  (p. 9.)  Nevertheless, I did not know that the deportation issue could be resolved in my favor by a stipulated loss amount under $10,000, or

1             that the loss amount could be determined to be lower, even with a
2             guilty verdict, at jury trial.

            The loss amount over $13,000 is demonstrably wrong. . . .

3

4 ECF No. 140-2 at 1-2.

5        Petitioner also declares, "I would not have agreed to a waiver of the right to appeal or seek

6 other post-conviction remedies, had I known of the immigration consequences and the possibility

7 of an alternate disposition." Id. at 1.  He elaborates, "Had I know of the immigration

8 consequences of admitting a loss amount over $10,000, then signing a waiver of post-conviction

9 relief, I would never have signed the waiver clause.  The immigration consequences are much too

10 grave for me to knowingly admit to this provision." Id. at 3.

11                              III.      LEGAL STANDARDS

12      A.  Coram Nobis

13        Coram nobis is an extraordinary form of relief, available to challenge the validity of a

14 conviction after the sentence has been fully served, "under circumstances compelling such action

15 to achieve justice." United States v. Morgan, 346 U.S. 502, 511 (1954).  The writ of coram nobis

16 allows a court to vacate its judgment "for errors of fact . . . in those cases where the errors [are] of

17 the most fundamental character, that is, such as rendered the proceeding itself invalid." United

18 States v. Mayer, 235 U.S. 55, 69 (1914).  Both the Supreme Court and the Ninth Circuit have

19 long made clear that coram nobis is a highly unusual remedy, available only to correct grave

20 injustices in a narrow range of cases where no more conventional remedy is applicable. See

21 Morgan, 346 U.S. at 511; Carlisle v. United States, 517 U.S. 416, 429 (1996) ("'[I]t is difficult to

22 conceive of a situation in a federal criminal case today where [a writ of coram nobis ] would be

23 necessary or appropriate.'") (quoting United States v. Smith, 331 U.S. 469, 475 n.4 (1947));

24 Hirabayashi v. United States, 828 F.2d 591, 604 (9th Cir. 1987) (describing writ of coram nobis

25 as "extraordinary"); Matus-Leva v. United States, 287 F.3d 758, 760 (9th Cir. 2002) (coram nobis

26 is "used only to review errors of the most fundamental character").

27        To qualify for coram nobis relief, a petitioner must demonstrate that: (1) a more usual

28 remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse

consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character.  United States v. Riedl, 496 F.3d 1003, 1006 (9th Cir. 2007).  "Whether a hearing is required on a coram nobis motion should be resolved in the same manner as habeas corpus petitions."  United States v. Taylor, 648 F.2d 565, 573 n.25 (9th Cir. 1981).  Accordingly, an evidentiary hearing is not warranted when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 USC § 2255(b).  A hearing may be denied if the petitioner fails to demonstrate a valid reason for not attacking his conviction earlier or that any alleged error was "of the most fundamental character."  Riedl, 496 F.3d at 1006-07.

B.  Ineffective Assistance of Counsel

To establish a constitutional violation based on ineffective assistance of counsel, a petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 692, 694 (1984).  In evaluating counsel's performance, the court must apply a strong presumption that counsel's representation fell within the wide range of reasonable professional assistance.  Strickland, 466 U.S. at 689.  Prejudice means that the error actually had an adverse effect on the defense.  There must be a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  Id. at 693-94.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  Id.  The court need not address both prongs of the Strickland test if the petitioner's showing is insufficient as to one prong.  Strickland, 466 U.S. 668 at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  Id. at 689.

The standards articulated in Strickland apply in the plea context.  Hill v. Lockhart, 474 U.S. 52, 57 (1985).  In order to show prejudice, petitioner must show "a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial."  Id.  Objectively unreasonable advice regarding the immigration consequences of a plea can constitute deficient performance within the meaning of Strickland.

10

1    Padilla v. Kentucky, 559 U.S. 356, 366 (2012).  Specifically, to perform as the counsel

2    contemplated by the Sixth Amendment, "counsel must inform her client whether his plea carries a

3    risk of deportation."  Id. at 374.

4         C.   Waiver of Post-Conviction Review

5              The right to appeal or to seek collateral relief from a conviction may be waived in a plea

6    or sentencing agreement.  United States v. Portillo-Cano, 192 F.3d 1246, 1249 (9th Cir. 1999);

7    United States v. Abarca, 985 F.2d 1012, 1014 (9th Cir.), cert. denied, 508 U.S. 979 (1993).  Such

8    a waiver is enforceable if (1) the language of the waiver encompasses the defendant's right to

9    review on the grounds raised, and (2) the waiver was knowing and voluntary.  United States v.

10   Jeronimo, 398 F.3d 1149, 1153 (9th Cir.), cert. denied, 546 U.S. 883 (2005).  A valid waiver of

11   post-conviction review deprives the court of jurisdiction to entertain an appeal or motion under §

12   2255.  United States v. Vences, 169 F.3d 611, 613 (9th Cir. 1999) (valid waiver precludes

13   appellate jurisdiction); Washington v. Lampert, 422 F.3d 864, 869 (9th Cir. 2005), cert. denied,

14   547 U.S. 1074 (2006) (valid waiver precludes habeas jurisdiction).

15             "The sole test of a waiver's validity is whether it was knowingly and voluntarily made."

16   United States v. Anglin, 215 F.3d 1064, 1068 (9th Cir. 2000).  Waiver of the right to post-

17   conviction judicial review is thus unenforceable with respect to an ineffective assistance of

18   counsel ("IAC") claim implicating the voluntariness of the waiver itself.  Washington v. Lampert,

19   422 F.3d at 871 (waiver does not bar claim that sentencing stipulation was involuntary as the

20   result of counsel's coercion and misrepresentation of consequences).  Waivers of post-conviction

21   review "must 'stand or fall with the agreement of which they are a part.'"  Portillo-Cano, 192

22   F.3d at 1250 (quoting United States v. Wenger, 58 F.3d 280, 282 (7th Cir. 1995)).

23                           IV.    DISCUSSION

24             Because a valid waiver of post-conviction review deprives the court of jurisdiction,

25   Washington v. Lampert, 422 F.3d at 869, the court must begin with the government's motion to

26   dismiss.  ECF No. 143.  Petitioner makes three arguments in opposition: (1) that coram nobis

27   relief is not waivable; (2) that coram nobis does not come within the scope of the waiver in this

28   case; and (3) that the waiver is not valid because the plea agreement as a whole was involuntary

                                          11

1  as the result of Mr. Haydn-Meyer's ineffective assistance and petitioner's resulting lack of

2  understanding of the immigration consequences of his plea.  ECF No. 136.[3]

3      A.  Coram Nobis Can Be Waived

4      Petitioner contends without authority that coram nobis "is by its nature a form of relief

5  which cannot be waived at the time of the plea agreement, because it alleges an error which was

6  unknown to the defendant and could not have been known to the defendant."  ECF No. 136 at 3.

7  Waivers of post-conviction remedies can and do extend to claims that are unknown at the time of

8  the plea, including most extra-record claims that are routinely brought in collateral proceedings.

9  The only exception is that a waiver will not bar a claim of ineffective assistance of counsel that

10  goes to the validity of the plea agreement or waiver itself.  Washington v. Lampert, 422 F.3d at

11  870-71.  That exception is required by the principle that waivers must be knowing and voluntary

12  in order to be enforceable.  Id.; see also Jeronimo, 398 F.3d at 1153.  There is no authority, and

13  no legal principle the court can identify, supporting the proposition that any particular form of

14  post-conviction relief is inherently non-waivable.

15      B.  Coram Nobis Comes Within The Scope Of Petitioner's Waiver

16      Petitioner contends that the plain language of the plea agreement limits the waiver of

17  collateral review to challenges brought under sections 2255 and 2241.  This argument requires

18  little discussion.  The plea agreement plainly states that petitioner gave up "any right he may have

19  to bring a post-appeal attack on his conviction or sentence."  ECF No. 115 at 8.  This broad

20  language, by its terms, waives *any* collateral attack.  Coram nobis is indisputably a form of "post-

21  appeal attack."  See Telink, Inc. v. United States, 24 F.3d 42, 45 (9th Cir. 1994) (a coram nobis

22  petition is a "collateral attack on a criminal conviction.").  The more specific references to

23  sections 2255 and 2241, which follow the global waiver of any post-appeal attack, must be read

24  in context as illustrative rather than exhaustive.[4]

---

[3]  The motion presently before the court is a renewed motion, directed at the Amended Petition.
Petitioner made his opposition arguments in reply to the original motion, which had been directed
at the original petition, and at argument adopted those arguments in opposition to the present
motion.
[4]  The structure of this provision is similar to that in the preceding paragraph, which first waives
(continued…)

1    C.  Petitioner Has Not Established That His Waiver Was Involuntary

2        Because petitioner's waiver applies to the claim raised in the coram nobis petition, it is

3    enforceable if it was knowing and voluntarily made.  Jeronimo, 398 F.3d at 1153, Anglin, 215

4    F.3d at 1068.  Petitioner contends that because counsel misled him regarding the immigration

5    consequences of his plea, his plea agreement was involuntary as a whole and the waiver therefore

6    unenforceable.  These allegations merge with petitioner's substantive ineffective assistance of

7    counsel claim.  Petitioner's allegations in this regard are contradicted by the record, and therefore

8    do not support a finding that the plea and waiver were involuntary.  See Taylor, 648 F.2d at 573

9    (summary adjudication appropriate in coram nobis context where record conclusively

10   demonstrates petitioner not entitled to relief).

11       Petitioner's declarations emphasize his subjective belief that he would not be deported,

12   despite the acknowledged plea agreement language and Rule 11 colloquy affirmatively

13   representing otherwise.  See ECF No. 140-1 at 1 ("Based on prior discussions with Mr. Haydn-

14   Meyer, *I did not expect* to be deported despite what was said in open court.  *I believed* that my

15   political asylum status would prevent deportation or removal.  *I did not expect* to be deported.")

16   (emphasis added).  Petitioner's subjective beliefs are not dispositive, no matter how sincere.  The

17   plea agreement stated categorically that the offense to which petitioner was pleading guilty was a

18   "removable offense," and further specified that "because defendant is pleading guilty to access

19   device fraud with a loss over $10,000, removal is presumptively *mandatory*."  ECF No. 115 at 9

20   (emphasis added).  Counsel stated in open court that petitioner had been advised "that he will

21   *mandatorily* be – his citizenship or any attempt for his citizenship would be revoked, and *he*

22   *would be deported*."  ECF No. 129 at 7 (emphasis added).  The district judge asked, "So, Mr.

23   Nuwintore, do you understand that your plea of guilty will probably result in your being deported

24   from the United States?"  Petitioner replied, "Yes, Your Honor."  Id.

25   *////*

26   _____

27   appeal of any sentence within statutory limits, and then specifically waives the right to appeal any
     order of restitution.  ECF No. 115 at 7-8.  The reference to restitution does not limit the
     immediately preceding waiver of appeal regarding sentencing generally.

28

1    Petitioner contends that the district judge's use of the word "probably," and the plea

2  agreement's boilerplate recitation that "pleading guilty may have consequences with respect to

3  [defendant's] immigration status if he is not a citizen," which preceded the case-specific

4  discussion of immigration consequences, created ambiguity regarding those consequences.  Any

5  ambiguity in the degree of certainty regarding immigration consequences cannot have rendered

6  the plea involuntary, however.  First, petitioner was told repeatedly that removal would be the

7  mandatory consequence of his plea.  His present claims of ignorance are therefore unavailing.

8  Second, the plea agreement provided as follows:

9              . . . defendant understands that no one, including his attorney or the
             district court, can predict to a certainty the effect of his conviction
10            on his immigration status.  Defendant nevertheless affirms that he
             wants to plead guilty regardless of any immigration consequences
11            that his plea may entail, even if the consequence is his automatic
             removal from the United States.

12

13  ECF No. 115 at 9.

14    Petitioner insists that his plea was invalid because counsel failed to explain the

15  significance of the $10,000 loss threshold to classification of his offense as an aggravated felony

16  for purposes of mandatory removability.  This contention is also belied by the record.  The plea

17  agreement specified that "because defendant is pleading guilty to access device fraud with a loss

18  over $10,000, removal is presumptively mandatory."  ECF No. 115 at 9.  Moreover, petitioner's

19  present insistence that the $13,301 loss amount could not have been proved at trial is contrary to

20  the stipulated factual basis that he affirmed at the Rule 11 colloquy, ECF No. 129 at 13-14, and to

21  the district court's findings after a hearing regarding restitution, ECF No. 125.

22    In his most recent declaration, petitioner for the first time presents specific allegations

23  regarding the advice that Mr. Haydn-Meyer provided within the attorney-client relationship, and

24  to which petitioner had referred obliquely in his first declaration as a basis for his subjective

25  belief that the dire predictions of removability would come to nothing:  "[Haydn-Meyer] assured

26  me that defendants with political asylum status would never be deported.  He showed me the

27  portion of the written plea agreement that indicated that there could be immigration

28  consequences, but he said I was protected by my political asylum status."  ECF No. 140-2 at 1.

14

1          To the extent (if any) that Haydn-Meyer meant that petitioner's asylum status per se

2    would preclude a *finding of removability* on grounds of an aggravated felony conviction, he was

3    wrong.  To the contrary, an aggravated felony conviction precludes asylum status and requires a

4    finding of removability.  See ECF No. 140-4 at 13 (Decision and Order of Immigration Court)

5    (citing Immigration and Nationality Act).  However, to the extent that counsel was predicting that

6    the facts supporting asylum would also likely prevent petitioner's actual return to Burundi, he was

7    correct.  Petitioner's history of persecution and the likelihood of future persecution and torture

8    have resulted in the withholding of removal.  As Haydn-Meyer predicted, petitioner has not been

9    returned to Burundi.

10          To the extent that petitioner did not at the time of his plea fully appreciate the technical

11    distinctions between removability status and physical deportation, or between asylum status and

12    the withholding of removal on grounds of persecution, petitioner has not established that his plea

13    was for that reason involuntary.  The record conclusively demonstrates that petitioner agreed to

14    plead guilty with the knowledge that "no one, neither his attorney or the district court, can predict

15    to a certainty the effect of his conviction on his immigration status." ECF No. 115 (Plea

16    Agreement) at 9.  He nevertheless affirmed his desire to plead guilty "regardless of any

17    immigration consequences that his plea may entail, even if the consequence is automatic removal

18    from the United States."  Id.

19          Petitioner's allegations do not support a finding that counsel's performance was

20    objectively unreasonable, an essential element of ineffective assistance either as grounds for

21    substantive relief or as a basis for finding a plea agreement invalid.  See Strickland, 466 U.S. at

22    689.  In Padilla v. Kentucky, supra, the Supreme Court held that counsel performs unreasonably

23    for Strickland purposes by failing to inform the defendant of a clear risk of deportation.  559 U.S.

24    at 374.  In Padilla, as here, the defendant pled guilty to an offense for which the immigration

25    statute provided that removal was presumptively mandatory.  Id. at 368.  Counsel had told the

26    defendant "that he did not have to worry about immigration status since he had been in the

27    country so long."  Id. at 359 (internal quotation omitted).   The lawyer in Padilla did not merely

28    fail to specify that deportation would be mandatory, or (as here) suggest that actual physical

1  removal from the United States would be avoidable notwithstanding mandatory removability, but

2  affirmatively and incorrectly advised the defendant that there would be *no* immigration

3  consequences.

4        The facts of the present case are quite different.  Unlike in <u>Padilla</u>, petitioner and his

5  counsel signed a plea agreement acknowledging that the conviction would have serious

6  immigration consequences including presumptively mandatory removal.  Counsel consulted an

7  immigration lawyer.  ECF No. 129 at 7.  Although he did not have a "full opportunity" to discuss

8  petitioner's situation with an expert, counsel did research the question and concluded that

9  petitioner "would be deported."  <u>Id.</u>  Counsel thus did exactly what <u>Padilla</u> requires: he

10  determined and advised that deportation was presumptively mandatory in light of the offense to

11  which petitioner pled guilty.  <u>See id.</u> at 368-69 (when immigration consequences are clear,

12  counsel must give correct advice).

13        To the extent that the immigration law was "unclear or uncertain" regarding the

14  relationship between presumptive removability and actual physical removal (such as withholding

15  of removal on grounds related to petitioner's previous asylum status), the Sixth Amendment

16  imposed a lesser burden on counsel:

17  
18  
19  
20
> There will . . . undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward . . ., a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences.

21  <u>Id.</u> at 369.  Petitioner was so advised.

22        For all the reasons set forth above, in light of the record as a whole, petitioner's

23  allegations fail to support the assertion that his plea was involuntary as the result of ineffective

24  assistance of counsel.  Because the plea agreement is enforceable, its waiver of collateral review

25  divests this court of jurisdiction.  The motion to dismiss should be granted.

26        D.  <u>The Ineffective Assistance Claim Is Subject To Summary Denial</u>

27        Even if <u>Washington v. Lambert</u>, <u>supra</u>, is interpreted to require direct consideration of the

28  merits of a <u>Strickland</u> claim that implicates the validity of a waiver, the result is the same: the

1   petition should be dismissed because the record conclusively demonstrates that petitioner is not

2   entitled to relief.  Taylor, 648 F.2d at 573.

3        For the reasons previously stated, counsel's performance was not unreasonable within the

4   meaning of Strickland and Padilla.  The record of the plea agreement and change of plea hearing

5   demonstrate that petitioner was advised that he faced mandatory removal as the result of his plea.

6   Petitioner's subjective belief that this would not happen does not change the fact that he was

7   competently advised.  To the extent that Mr. Haydn-Meyer predicted that petitioner would not

8   actually be sent back to Burundi despite his mandatory removability, counsel was right.

9   Petitioner's allegations, accepted as true, establish that he did not understand at the time of his

10  plea the precise relationship between removability as an aggravated felon and relief from removal

11  based on the threat of persecution.  Nor did he appreciate the hardships attendant to indefinite

12  withholding of removal status.  However, Strickland and Padilla focus on what counsel did or did

13  not do, not on what petitioner expected or believed.  Even if counsel was confused or made

14  confusing statements about relief from removability, the record conclusively shows that petitioner

15  agreed to plead guilty "regardless of any immigration consequences that his plea may entail, even

16  if the consequence is automatic removal from the United States."  ECF No. 115 (Plea Agreement)

17  at 9.

18       The facts of this case are distinguishable from those of United States v. Kwan, 407 F.3d

19  1005 (9th Cir. 2005), on which petitioner relies.  In Kwan, the Court of Appeals ordered coram

20  nobis relief on ineffective assistance of counsel grounds where counsel had "reassured

21  [petitioner] that there was no serious possibility that his conviction would cause him to be

22  deported," and told him to ignore the judge's warnings about immigration consequences, when

23  pleading to an aggravated felony (bank fraud).  Kwan, 407 F.3d at 1008.  Kwan did not involve a

24  written plea agreement like the one in this case, which reflects both counsel's and petitioner's

25  understanding that "because defendant is pleading guilty to. . . fraud with a loss over $10,000,

26  removal is presumptively mandatory."  ECF No. 115 at 9.  Moreover, Mr. Haydn-Meyer did not,

27  like the attorney in Kwan, tell his client that deportation "was not a serious possibility."

28  ////

17

Kwan, 407 F.3d at 1008.[5]  Here, defense counsel, the prosecutor (via the plea agreement language) and the court all told petitioner that deportation was a very serious possibility – indeed, that removal was mandatory.  Petitioner's subjective confusion about the practical implications of being deportable but not returnable to his home country does not make counsel's advice unreasonable.

For these reasons, even if the voluntariness of the waiver and the merits of the ineffective assistance claim merge so completely that the latter must be reviewed, petitioner's claim should be summarily denied.

CONCLUSION

Accordingly, for all the reasons set forth above, IT IS RECOMMENDED that:

1.  The United States' motion to dismiss, ECF No. 143, be GRANTED; and

2.  The Amended Petition For Writ Of Error Coram Nobis, ECF No. 140, be DISMISSED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the

////

////

////

_____

[5]  In Kwan, the Ninth Circuit held that counsel's affirmative misrepresentation regarding immigration consequences could constitute deficient performance under Strickland, despite circuit precedent at the time holding that the mere failure to advise regarding immigration consequences could not.  Kwan, 407 F.3d at 1015-17.  The Supreme Court in Padilla later rejected this distinction between affirmative misrepresentation and failure to advise.  Padilla, 559 U.S. at 370-74.

18

1    District Courts order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

2    DATED: March 11, 2015

3                                                _____

4                                                ALLISON CLAIRE
                                                 UNITED STATES MAGISTRATE JUDGE